UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :       **INDICTMENT**

      - v. -                                :       12 Cr.

MARK HOTTON,                                :       **12 CRIM 825**

      Defendant.                       :

- - - - - - - - - - - - - - - x

## COUNT ONE

### (Scheme to Defraud Producers of "Rebecca the Musical")

      The Grand Jury charges:

### The Defendant

      1.    At all times relevant to this Indictment, MARK HOTTON, the defendant, resided in West Islip, New York.  HOTTON, a former stockbroker, was affiliated with entities that held themselves out as electrical contracting companies and brokerage firms.  HOTTON also created and controlled other companies that were used in the schemes to defraud discussed herein.  From in or about November 2005 through in or about February 2009, HOTTON worked for a prominent investment bank and financial services firm.

### Background Regarding Production of "Rebecca the Musical"

      2.    In or about 2011, two theater producers ("Producer-1" and "Producer-2"; together, the "Producers") started raising money for, and organizing, the Broadway



production of a musical called "Rebecca the Musical"

("'Rebecca,'" or the "Production"), which is based on the novel

by Daphne du Maurier.  As of in or about January 2012, however,

the Producers were still short at least $4,000,000 of the

minimum $12,000,000 capitalization threshold required to finance

the Production.

<u>Scheme to Defraud Producers and Production of "Rebecca"</u>

      3.   Beginning in or about January 2012, MARK HOTTON,

the defendant, falsely and fraudulently represented to the

Producers that, in exchange for fees to be paid to him through

his "consulting" company, he would secure funding for the

Production.  Under the terms of their contract with HOTTON's

"consulting" company, the Producers agreed to pay an initial fee

of $7,500, eight percent of funds raised in excess of $250,000,

and tiered percentages of the Production's net profits.

      4.   In or about February and March 2012, MARK HOTTON,

the defendant, falsely represented to the Producers that he had

secured commitments of approximately $4,500,000 million to the

Production from several overseas investors (the "HOTTON

Investors").  In truth and in fact, the HOTTON Investors were

HOTTON's own inventions, and HOTTON used the promise of these

investments to defraud the Producers into paying him tens of

thousands of dollars in purported fees and expenses.

5.    In furtherance of the scheme to defraud, MARK HOTTON, the defendant, took several steps to conceal his lies regarding the approximately $4,500,000 in commitments, including fabricating identities, companies, email addresses, and communications from those addresses.  For example:

a.    HOTTON created email addresses, which he controlled, but which he made appear to belong to the HOTTON Investors.  Using these email addresses and other trappings he had devised, HOTTON fabricated email correspondence to deceive the Producers into believing that HOTTON had secured investors and funding for the Production.

b.    In or about March 2012, HOTTON provided the Producers with purported signed commitments from four of the HOTTON Investors for, in the aggregate, $4,500,000.  One of these HOTTON Investors, "Paul Abrams," purportedly committed to investing approximately $2,000,000 in the Production.  HOTTON later told the Producers that, in furtherance of his efforts to keep this commitment in place, HOTTON would accompany "Paul Abrams" and "Paul Abrams's" son on a safari trip, and had in fact already paid out the costs of the trip.  HOTTON requested and received from the Producers reimbursement of approximately $18,210.88 for this invented trip.

c.    From in or about July 2012 through August 2012, after concocting the existence of "Paul Abrams" and

3

deceiving the Producers into believing that "Paul Abrams" would provide approximately $2,000,000 to the Production — and needing an excuse for having failed to secure the promised funds from "Paul Abrams" or any of the other HOTTON Investors — HOTTON orchestrated, through email correspondence, the untimely death of "Paul Abrams," ostensibly from malaria.

      6.   In the three months spanning March 2012 through June 2012, MARK HOTTON, the defendant, defrauded the Producers into paying him a total of approximately $35,000 in "fees" and supposed expense reimbursements, including the $18,210.88 for the purported safari trip with "Paul Abrams."

      7.   In or about August 2012, after MARK HOTTON, the defendant, falsely and fraudulently told the Producers that "Paul Abrams," the primary HOTTON Investor, had died, HOTTON devised a second method to fraudulently extract tens of thousands of dollars from the Producers. Specifically, HOTTON pretended to assist the Producers in securing a loan in excess of $1,000,000 for the Production, in return for which the Producers paid him and entities that he and his associates controlled over $30,000 in fees and related "expenses." To effectuate this part of the scheme, HOTTON used a second set of fictional characters and sham companies tied to email addresses that he controlled.

4

8.   On or about September 29, 2012, when it had become clear that neither of the funding sources for "Rebecca" purportedly secured by MARK HOTTON, the defendant, would materialize, the Production was postponed indefinitely.  By that time, the Producers had spent millions of dollars of funds committed by genuine investors, had incurred millions more dollars in debt related to the Production, and had been defrauded by HOTTON into paying at least approximately $65,000 for services that had never been rendered and expenses that had never been incurred.

<u>Statutory Allegation</u>

9.   From in or about January 2012 up to and including in or about September 2012, in the Southern District of New York and elsewhere, MARK HOTTON, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted and aid and abet the transmission, by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HOTTON defrauded the producers of a potential Broadway musical into paying him fees

5

and other monies by falsely promising them financing for the musical.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT TWO

### (Scheme to Defraud Real Estate Company)

The Grand Jury further charges:

10.   The allegations contained in paragraphs 1 through 8 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

### Scheme to Defraud Connecticut Real Estate Company

11.   At the same time that he was conducting the "Rebecca" scheme, MARK HOTTON, the defendant, employed a similar set of deceptive devices, including the use of many of the same email addresses, names, and fictitious companies that were used to defraud the "Rebecca" Producers, to defraud another victim, a Connecticut-based real estate company (the "Real Estate Company").

12.   Specifically, in or about September 2011, MARK HOTTON, the defendant, falsely told the Real Estate Company's president (the "President") that HOTTON could recruit investors for the Real Estate Company's investment fund and assist the company in obtaining a $20,000,000 loan for one or more of its projects.   As part of the scheme, HOTTON lured the Real Estate

Company into paying hundreds of thousands of dollars in advance "fees" in connection with the loan.

       13.   For example, in or about March 2012, MARK HOTTON, the defendant, told the President that an entity ("Lender-1") would be able to finance the $20,000,000 loan, but that Lender-1 required a "fully refundable" upfront fee of $200,000.  On or about March 16, 2012, based on HOTTON's representations and instructions, the Real Estate Company wired $200,000 to a bank account held in the name of a company associated with HOTTON.  Subsequently, on or about April 4, 2012, April 19, 2012, and April 27, 2012, the Real Estate Company, based on further misrepresentations by HOTTON regarding Lender-1's ability to finance the loan, wired over $100,000 more to other bank accounts controlled by companies associated with HOTTON.  Notwithstanding these payments, as of May 2012, the Real Estate Company had yet to receive any proceeds from Lender-1 or any other lender.

       14.   Between in or about May 2012 and in or about October 2012, MARK HOTTON, the defendant, lulled the President into believing that the loan would be funded by another lender ("Lender-2").  The Real Estate Company, based on HOTTON's further misrepresentations and instructions, made further payments, wiring in excess of approximately $450,000 to bank accounts maintained by companies associated with HOTTON.  As of

November 2012, the Real Estate Company has not received any of the funding that HOTTON promised to arrange.

15. As he had done with the promised financing for "Rebecca," MARK HOTTON, the defendant, used the promise to raise money and to facilitate a loan for the Real Estate Company to defraud the Real Estate Company into paying in excess of $750,000 to himself and entities connected to him, including some of the same entities, such as Lender-1, that HOTTON used in furtherance of his scheme to defraud the "Rebecca" Producers.

### Statutory Allegation

16. From in or about September 2011 up to and including in or about October 2012, in the Southern District of New York and elsewhere, MARK HOTTON, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted and aid and abet the transmission, by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HOTTON defrauded a Connecticut-based real estate company into paying him and entities controlled by him over $750,000.

(Title 18, United States Code, Section 1343 and 2.)

## FORFEITURE ALLEGATIONS

17.  As a result of committing the wire fraud offense alleged in Count One of this Indictment, MARK HOTTON, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to at least $65,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained by HOTTON and others as a result of the offense.

18.  As a result of committing the wire fraud offense alleged in Count Two of this Indictment, MARK HOTTON, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to at least $750,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained by HOTTON and others as a result of the offense.

## Substitute Asset Provision

19.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)   cannot be located upon the exercise of due diligence;

        (b)   has been transferred or sold to, or deposited with, a third person;

        (c)   has been placed beyond the jurisdiction of the Court;

        (d)   has been substantially diminished in value; or

        (e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of said defendant up to the value of the above forfeitable

property.

    (Title 18, United States Code, Sections 981 and 982; Title 21
United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON

PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

MARK HOTTON,

Defendant.

## INDICTMENT

12 Cr.

(18 U.S.C. §§ 1343 and 2)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

_Foreperson._

11/13/12  Fld Ind Post 11-1-07 This case
is assigned to Judge Koeltl for
all purposes.

Mag Judge Dolinger