Some relevant examples include:

a. <u>United States v. Viertel</u>, 01 Cr 571 (JGK). Christian T. Viertel was sentenced to 21 months in a fraud case after a trial conviction. The restitution order was $345,673.96.

b. <u>United States v. Blumenberg</u>, 01 Cr 571 (JGK). Fritz G. Blumenberg was sentenced to 30 months in custody in the same fraud case as Viertel. The restitution order was $2,000,000.00.

c. <u>United States v. Follieri</u>, 08 Cr 850 (JGK). Raffaello Follieri was sentenced to 54 months after pleading guilty to multiple counts of wire fraud and money laundering. The plea agreement stipulated a range of 51 – 63 months. The PSR recommended 97 months. Similar to this case, but arguably much worse, the record recounts repeated examples over a period of years of Follieri lying to investors and others. The restitution order was $4,057,042.00.

d. <u>United States v. Lederhaas-Orkin</u>, 13 Cr 560 (PGG). Ingrid Lederhaas-Okun was sentence to one year and one day after pleading guilty to one count of interstate transportation of stolen property. The plea agreement stipulated a range of 37-46 months. The defendant, an executive at Tiffany's, used her position to hide her theft of millions of dollars of jewelry from her employer over a period of years. The restitution order was $2,239,874.00.

e. <u>United States v. Adelson</u>, 441 F.Supp.2d 506 (S.D.N.Y. 2006). Adelson was sentenced to 3 ½ years in a securities fraud case after trial conviction where the guidelines, driven by the loss table, were life imprisonment. Judge Rakoff resisted the "inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss" and instead, focused on imposing a sentence sufficient but not greater than necessary. The court cited "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective "white collar" offenders. <u>Id</u>. at 509, 514.

4. <u>EDNY Pending Sentence</u>:

Mr. Hotton is scheduled for sentence in the EDNY case on November 14, 2014. The plea agreement in that case estimates an adjusted offense level of 30, Criminal History Category I, and a guideline range of 97 – 121 months. That agreement specified a loss amount in excess of $ 2.5 million. The April 30, 2014 Probation Department PSR recommended sentence, submitted well after the bail revocation proceedings and taking that into account, recommends a sentence

of 180 months. That recommendation states "the applicable advisory guideline custody term of 240 months (statutory maximum) is driven by the loss amount, and it is the position of the Probation Department that while $15 million is significant, the resulting guideline range is excessive. As such, a sentence below the applicable guideline term is deemed sufficient." The PSR found a total offense level of 42, based on a higher loss amount for the EDNY offenses, denial of acceptance points and addition of enhancements. This resulted in a guideline range above the statutory maximum of 20 years.

The EDNY PSR includes the SDNY case as relevant conduct, and thus the loss amounts in the SDNY are added in to the losses in the EDNY.

So, even assuming, *arguendo,* that Mr. Hotton is sentenced at the low end of his plea agreement range in the EDNY, and that the EDNY sentence is run concurrent with the SDNY sentence, he would still have at least five years of incarceration ahead of him, if he is given time served here.

5. Attempted Cooperation:

Mr. Hotton proffered to the U.S. Attorney in both districts about his conduct, in an attempt to cooperate.

In the Eastern District, despite more than 20 meetings, he was not offered a cooperation agreement. See, Letter of A.U.S.A. Burton Ryan to A.U.S.A. Edward Diskant, Exhibit D.

The fact that Mr. Hotton was called back for so many meetings indicates that his information was, at the least, of considerable interest to the government.

Additionally, Mr. Hotton turned over more than 60 boxes of documents and many transcripts of conversations to the government.

Mr. Hotton's position is that the guilty plea of his wife and co-defendant, Sherri Hotton, in the EDNY case, was a result of his cooperation. This is not disputed by AUSA Burton Ryan in the EDNY.

In the Southern District, Mr. Hotton also met with the U.S. Attorney and law enforcement agents, but was not offered a cooperation agreement. The government here agrees that they have no information that he was inaccurate in the proffer meetings at any time.

So, Mr. Hotton's attempted cooperation in both districts, although not resulting in a cooperation agreement, was valuable to the government for its accuracy. This fact is strongly in favor of a sentence below the stipulated guideline range.

6. Charitable Work of Mark Hotton:

The Rising Child Foundation, was established in 1998 by Mark and Sherri Hotton, and funded by them as a private foundation. References to gifts Mark Hotton made to people in need in his community are referenced in the letters written to your Honor.

Also, Mark Hotton was a "card carrying member" of New York Blood Center in Westbury, New York. He regularly donated blood. In fact, a blood donation he made while on release in this case, of platelets used to save the life of a young girl, see Exhibit U, wound up as a component in his revocation for going "off limits."

7. <u>Medical and Addiction Issues:</u>

Dr. Louis Teitelbaum is a psychiatrist who has known Mark Hotton as a neighbor and friend since 2006, and has participated with Mark in civic groups and fundraisers to support local charities. Dr. Teitelbaum writes that he has observed Mark frequently drink to excess. He has observed Mark "severely intoxicated with slurred speech and ataxic gate, and believes Mark has suffered with an alcohol abuse problem for years." Dr. Teitelbaum suggests that prison treatment is appropriate for Mark. Exhibit E.

Diane C. Maiwald, M.D., writes that Mark has a history of melanoma and needs to be examined every three months. Exhibit F.

8. <u>Effect of Incarceration on Mark Hotton and his Family:</u>

Mark Hotton is has already suffered and will continue to suffer from the effects of his criminal conduct.

The letters from family and friends, below, show how close Mark was to his mother and father, and how he cared for them when they were in trouble financially and also in poor health in their later years. Mark's mother was an invalid her last two years, during which Mark one

month after his arrest. Tragically, Mark was unable to attend his mother's wake and burial because of his incarceration.

Mark's four year old daughter is particularly distraught because her biological father has terminal brain cancer, and now, with Mark incarcerated, she feels she has lost both of her fathers.

His home on Long Island must be sold to pay his forfeiture amounts, and his wife and children are now getting aid from social services.

Mark has recurring melanoma, and has been taken out of MDC on several occasions to have growths removed from his skin.

His oldest son had to withdraw from Boston University, unable to continue because Mark cannot pay the tuition.

Even assuming the best case scenario, after being sentenced in both cases, he will have at least an additional five years of incarceration ahead of him.

An additional factor is the harsh pretrial confinement conditions Mark has endured at MDC for the 23 months he has been confined there, a factor the Court may also consider in tempering the sentence here.

9. <u>Evidence of Rehabilitation during Incarceration</u>

In the time Mark Hotton has been at MDC, he has participated in numerous Bible Studies programs. He has received certificates from The Gospel Echoes Team for completion of the Basic Series Bible Study Correspondence course; and nine Certificates from Exodus Bible Correspondence School. See Exhibit G.

Mark Hotton is working at MDC as an Institutional Kitchen Orderly, and the Work Performance Rating dated September 15, 2014 shows that his overall performance rating is between Good and Outstanding. See Exhibit H.

## LETTERS FROM FAMILY AND FRIENDS

Family and friends of Mark Hotton have written to your Honor to express their support. Mark Hotton has also written to your Honor. These letters are attached as Exhibits and summarized below.

1. <u>Family:</u>

Sherri Hotton, Mark's wife, leads a long list of people who describe Mark's generosity to friends, family, and neighbors, and even to people in the community he doesn't know at all but who are in need. Sherri writes, Mark "would send families money, computers, trips or whatever was needed and never told anyone about his generosity...Mark never told anyone, never bragged." She also describes how he would give Christmas gifts to poor kids from the local churches and YMCA. Sherri describes in detail many instances of Mark's generosity, including the blood platelets he donated to a little girl in need while he was on release in this case. Exhibit I.

Patricia Corsillo is Mark's former partner (they were never married), and the mother of their son, Michael, now 21. She writes about how she let Mark go live with his Dad, Mark. For Patricia, having Mark assume financial responsibility for Michael's schooling was the most important thing to her. Unfortunately, she writes, Mark failed in this crucial area, and Michael had to leave Boston University in his third year with a huge debt owed to that school. Still Patricia hopes that Mark will not receive a long sentence, so that he may return to his children soon. Exhibit J.

Carol Johnson is the mother of Sherri Hotton, Mark's wife. She has known Mark for 14 years. Mark and Sherri got married in Italy so that Carol, her husband and the newlyweds could all make that trip together to the country Carol's grandparents had migrated from. It was a dream come true for Carol. Carol recounts many good things Mark did for his family and extended family. Carol also writes how Mark helped disadvantaged and suffering people and families in the community, even those he did not know: a family with two sons battling leukemia; a family whose house burned down; an orphanage that needed computers; young visitors from England who needed a place to stay and were welcomed at Mark's home. Carol also writes of the abuse and bullying that Mark's younger children have to endure at school as a result of the charges against both of their parents. Attached also is a poem Carol wrote on the occasion of Mark's 40th birthday. Exhibit K.

Ed Johnson is Mark's father in law. He writes that when his daughter Sherri first met mark in 2000, Sherri's four year old daughter "took a liking to Mark right away." Ed also writes of Mark's generosity to people in the neighborhood, and to charities as well.
Also, Ed writes about that Mark "donates blood probably 2 -3 times a year and recently he donated platelets to a little girl who he was a perfect match. Doctors claim it will save her life." Exhibit L.

Bernadette Grasso is the aunt of Sherri Hotton. Bernadette met Mark about 15 years ago. She has observed, over the years, how "attentive he was to the children." And she makes this observation as a "very family oriented and as a woman and as the aunt to Sherri." Exhibit M.

Deborah Hotton is Mark's sister in law. She is married to Mark's brother Kevin, and knows Mark for 30 years. She recounts how devastating Mark's release on bail and then sudden remand was for the children in the family. Deborah thinks Mark's perception of how he will live his life in the future has changed as a result of this case, and hopes he is given "the chance to get back into society and reform." See Exhibit N.

Michael C. Hotton is Mark's eldest child. He describes his relationship with his father and step mother, Sherri, and her children, and how they all bonded as one family when Michael moved in with them. Michael also writes how dependent he is on his father for support, and how much the whole family needs Mark back and working to keep them going. Exhibit O.

[NAME REDACTED]   is Mark's step daughter, age four. She writes, "he will always be a magnificent father figure in my life." She writes of his enthusiasm and good humor, and how much she and her little brother and sister need Mark to be home for them. Exhibit P.

[NAME REDACTED]   is Mark's 12 year old daughter. Her short letter is in many ways the most touching; her great affection for her Dad comes through clearly. Exhibit Q.

[NAME REDACTED]   is Mark's 9 year old son. He writes how Mark has taught him to fish, and fix things. He also writes fondly of his trip to Alaska with a friend and Mark, and how much he misses his Dad. Exhibit Q.

Pauline Johnson is the wife of Sherri Hotton's brother, Edward. As Mark's sister in law, she has firsthand experience of Mark's graciousness with his entire family, old and new. She writes, "I've seen the way he takes care of his children, and I would most definitely consider him one of the best fathers I have seen in a long time. I have a 10 year old daughter of my own, and she just loves Uncle Mark." Pauline also writes of the personal care Mark gave his disabled mother before she died. Exhibit S.

Edward Johnson is Pauline Johnson's husband, and the brother of Sherri Hotton. Edward writes of Mark, "He is a great father to my nieces and nephews, and a great husband to my sister." Exhibit T.

2. <u>Friends and Community Service:</u>

Harvey Schaffler is the Executive Director of the New York Blood Center in Westbury, New York. He writes that Mark has been a volunteer blood donor since 2003 and is a member of the "Gallon Club." "Most recently, in response to an urgent request, he donated platelets on the afternoon of October 1, 2013, a procedure that typically requires up to two hours. Platelets are needed for clotting and are used extensively by cancer patients, accident victims and others with clotting disorders." Mr. Schaffler's letter and Mark Hotton's dated Blood Donor Receipt are attached as Exhibit U.

Renee Gmelch is a close family friend. Her daughter and Mark's daughter are best friends, so she has become very close with the Hottons. Renee writes, "Before I met Mark a dear friend of mine her husband passed away tragically falling from a roof while off duty from his New York City Fire Department job. Without knowing my friend and without hesitation a check came in the mail with a substantial amount of money with a simple note, I cannot replace your loss, but maybe this can help you through this time." See Exhibit V.

Dr. Louis Teitelbaum has known Mark Hotton since 2006 as a neighbor and friend. He has participated with Mark in civic groups and at fundraisers to support local charities. He writes that Mark is a good neighbor who was family minded, and very supportive to his children. Mark was also active in local charities. Dr. Teitelbaum trusted Mark to occasionally drive his children to and from events. "Regardless of any accusations of fraudulent activity all of my dealings with Mr. Hotton were fair and honest and focused on family and community. Mark's absence at home has created many difficult situations for his children." See Exhibit W.