**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JMM:BTR
2010R002238

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

<u>Via ECF and By Hand</u>    October 15, 2013

The Honorable Joanna Seybert
Senior United States District Judge
Eastern District of New York
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722-9014

   Re: <u>United States v. Mark Hotton, et al.</u>
    <u>Criminal Docket No. 12 CR 649(S-1)(JS)</u>

Dear Judge Seybert:

  The government moves to revoke Mark Hotton's bail and requests that he be detained pending sentence. This application is based both on the defendant's new criminal conduct, as well as, Hotton's intentional failure to meet or comply with any of the terms and conditions of release previously set by the Court.

  On July 31, 2013, the defendant was released on the conditions that he provide a $3,000,0000 bond, secured by $1,000,000 in money or property. In addition, the defendant was required to confine himself to his home, except for work, church, medical or legal appointments pre-approved by Pre-Trial Services. Hotton also agreed to commit no new federal, state or local crimes. None of these conditions have been honored.

  Based on facts now before this Court, it is clear that rather than comply with the terms of his release, Hotton repeatedly lied to Pre-Trial Services, concerning the terms and conditions of his employment. Hotton falsely claimed to be working in a training program in order to leave his home, including on Labor Day, where he was observed by neighbors on the Ferry to Fire Island. Provided forged and fraudulent documentation concerning his employment duties

and hid from Pre-Trial Services the fact that he was fired from his first position.  Hotton, in addition, repeatedly ignored the restrictions on his activities and movement, and even after Pre-Trial warned him of the importance of complying with these bail terms, continued to act with impunity, even threatening and harassing his second employer with false claims and threats of federal prosecution when his continued misdeeds were uncovered.  <u>Memorandum of Pre-Trial Services</u>, October 11, 2013.

Finally, based on impartial valuation of the properties that were posted as security which the government has obtained since the initial bail hearing, it is clear that Hotton has never met the minimum million dollars security required by the Court, and should never have been released.  See: <u>Letter of Timothy Denin</u>, September 30, 2013; Appraisals of Alaskan Property, August 2013.

**Background**

On July 30, 2013 the defendant plead guilty to laundering money, millions of dollars, he illegally obtained from a series of security, mail and wire frauds, and embezzlement from an employee benefit fund commencing in 1995 and ending in 2012, in violation of Title 18 U.S.C. § 1956(h).  That count carries a maximum term of imprisonment of 20 years and a Sentencing Guidelines offense level of 30, which recommends a range of imprisonment of 97-121 months.  In addition, one day earlier, on July 29, 2013, Hotton plead guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343 in the Southern District of New York, these charges also carried a recommended term of imprisonment.

Title 18 U.S.C. §3143(b) requires that a defendant who has admitted guilt and who is awaiting imposition or execution of sentence:

> be detained, unless the judicial officer finds by **clear and convincing evidence** that the person is not likely to flee or pose a danger to the safety of any other person or the community. (Emphasis supplied).

This Court, applying that statute, relied on Hotton's assertion that he had met the surety conditions and would follow the terms and conditions outlined above and released the defendant. Transcript of Bail Hearing, July 30-31, 2013.

**Compliance while on Release**

On October 11, 2013, Pre-Trial Services after a thorough investigation documented numerous violations of the terms and conditions of the defendant's release on home confinement. A hearing to address those issues is scheduled for Thursday, October 17, 2013.

The Pre-Trial Services memorandum plainly demonstrates prima facia evidence that Hotton committed numerous violations of 18, U.S.C, §1001 in repeatedly lying concerning whether, where and how he was employed. These offenses, which involve multiple misrepresentations and forgeries, are similar to the conduct underlying the charges he has already plead guilty. See: Exhibits A, C, and D. All these false communications were designed to be forwarded to Pre-Trial Services to support Hotton's various false claims to Pre-Trial Services as to where he was or what he was doing.

Federal investigators have independently confirmed with Hotton's reported employers that he was not employed between August 22 and September 4, 2013. Yet Hotton during that time reported to Pre-Trial Services he was employed from August 26th in a "training program" and even asked Pre-Trial to release him from home confinement to go to work on Labor Day, September 2, 2013. A day he was actually observed traveling by ferry to Fire Island by a neighbor. See: Exhibit G.

Of additional concern is the email sent by Hotton on October 9, 2013, threatening his past employer with federal prosecution if an allegedly withheld paycheck is not delivered. Here Hotton makes multiple misrepresentations concerning his relationship with federal prosecutors and agents, confirms that he has previously revealed that he is some sort of "cooperator" with the government and misrepresents that some sort of federal crime and prosecution will occur unless he gets his money. None of these facts are true, Hotton's actions are extortionate, and entirely of his own creation. See: Exhibit B and Pre-Trial interview of employer.

When there is probable cause to believe that, while on release, a person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b).

The Second Circuit has held that, under this provision, the Government need only show facts that "'warrant a man of reasonable

caution in the belief' that the defendant has committed a crime while on bail." <u>United States v. Gotti</u>, 794 F.2d 773, 777 (2d Cir. 1986).

### Insufficient Security

Based on current valuations of the property pledged by the defendant, obtained in August 2013, a deficiency exists of between $200,000 and $400,000 below the million dollars security required for Hotton to be free on bail. A work sheet outlining this analysis is attached.

Timothy Dennin, counsel for a number of the defendant's victims in the above captioned case, submitted a letter to the Court and the government concerning the value of the property pledged. The Court may recollect, that the government shared Mr. Dennin's concerns relative to the value and equity of the property pledged and raised those arguments at the bail hearing on July 30, 2013. The government did not believe that Mark Hotton had pledged sufficient property or assets, as he was required to, to meet a secured value of $1,000,000. That amount was set as a term and conditions of bail originally set in the Southern District of New York and later adopted in the Eastern District of New York. At the bail hearing, the Court declined to accept the appraisals relied on by the government, and accepted the defense's argument that Hotton's fellow investors, as they were also victims of Hotton's frauds, had "low balled" the appraisal in order to buy Hotton out at an under-market rate, and thus the appraisals were unreliable. Unrevealed was a $500,000 mortgage on the New Jersey property that negated any equity asserted to exist in the property. Transcript of Bail Hearing, July 30-31, 2013. Ultimately, while the government indicated it was obtaining current appraisals, the Court decided to accept the Alaskan and New Jersey properties as sufficient security to justify release of the defendant. Mr. Dennin, in his letter, relied on tax valuations for his analysis.

The government has since obtained independent commercial appraisals of the property in Alaska. Copies of those appraisals are attached. These appraisals returned values similar to those previously rejected by the Court. These appraisals completed in August 2013 value Hotton's net interest in the three Alaskan properties at approximately $600,000. The addition of the New Jersey property, using either the government's last appraisal from 2012 or Mr. Dennin's, identifies a deficiency that still exists of between $200,000 and $400,000. At any bail revocation hearing the Court may consider whether any intentional material misrepresentations were made.

      The defendant Mark Hotton has proved himself unsupervisable and incapable of following the Court's bail restrictions. Throughout his release, Hotton's actions have been entirely contemptuous of the Courts rulings. He has proven himself a danger to the community. The Court should remedy this situation and remand the defendant pending sentence.

                                    Respectfully submitted

                                    LORETTA E. LYNCH
                                    United States Attorney

                     By:    _S/Burton Ryan_____
                            BURTON T. RYAN, JR.
                            Assistant U.S. Attorney

Enclosures


cc:   Marianne Rantala
      Counsel for Hotton